UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

MICHAEL A. FOWLER )
 )
V. ) NO. 2:10-CV-250
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income were denied following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 44 years of age at the time of his alleged disability onset date, January 1, 2002. He has a high school education and is a veteran of the armed forces. He was found unable to return to any of his past relevant work.

Plaintiff's medical history, distilled from the administrative record of 1,662 pages, is fairly described in the Commissioner's brief as follows:

> On May 5, 2006, Mr. Fowler entered the emergency room (ER), but then subsequently left the next day, without prescriptions, after he was caught smoking in the bathroom (Tr. 227). This report stated that Mr. Fowler had been involved in an altercation and had multiple rib fractures (Tr. 227). His past medical history indicated alcohol since age 8, with at least one driving under the influence (DUI) (Tr. 227). Mr. Fowler also reported a ruptured aneurism that occurred in 1986 and at least two subsequent brain surgeries for the aneurism (Tr. 227).
> On May 7, 2006, Mr. Fowler entered the emergency room and complained of difficulty breathing (Tr. 225). He had been diagnosed with pneumonia a few days prior to this admission (Tr. 225). Although improving, Mr. Fowler left the ER against medical advice (Tr. 225). Mr. Fowler, however, returned to the ER less than twelve hours later, after realizing he could not improve on his own (Tr. 225). The ER record reported that Mr. Fowler smoked 2-3 packs of cigarettes each day (Tr. 225). The record also stated that he did a lot of steel work (Tr. 225). On discharge, Dr. Herring suggested a nicotine patch and advised Mr. Fowler to stop smoking (Tr. 226). On discharge on May 8, 2006, Dr. Herring advised that Mr. Fowler limit himself to light duty for the next two weeks and then return to unlimited activity (Tr. 230).
> On September 2, 2007, Mr. Fowler entered the ER and reported increased pain over the past three days after running out of his pain medications (Tr. 838). Mr. Fowler was not reporting an injury but noted that since he had surgery for an ordinal fracture, he had been wearing a walking boot (Tr. 838). He reported that he had played guitar in a rock concert that weekend and thought that he had stood on his foot for too long (Tr. 838).
>
> On November 26, 2007, Salley S. Jessee, M.D., reviewed the record and

opined that (mentally), Mr. Fowler could understand and remember simple, routine, repetitive tasks, and that he could carry out such tasks out (Tr. 882). Dr. Jessee opined that Mr. Fowler could maintain concentration for routine, uncomplicated tasks for two-hour periods during an eight-hour workday, and he could complete a normal workweek without excessive interruptions from psychologically based symptoms (Tr. 882). Dr. Jessee further opined that Mr. Fowler could relate to supervisors and co-workers, and that he could adapt to simple change and must avoid workplace hazards (Tr. 882).

On December 3, 2007, Mr. Fowler saw Krish Purswani, M.D., and complained of low back pain for twenty-seven years (Tr. 884). Despite telling Dr. Purswani that he suffered a myocardial infarction (MI) eight months prior to the examination, Mr. Fowler acknowledged that he was currently chest pain-free (Tr. 884). Mr. Fowler told Dr. Purswani that he suffered from brain aneurism(s) since 1986, and that he had undergone four brain surgeries (Tr. 884). He alleged that currently, he had a poor memory (Tr. 884). Mr. Fowler also complained of ankle pain since 2005, when he fractured his ankle in a fall (Tr. 884). Although he underwent ankle surgery, Mr. Fowler explained that he re-injured the ankle after falling again in 2007 (Tr. 884). Dr. Purswani also reported that Mr. Fowler also received treatment for mental problems (Tr. 885).

Dr. Purswani noted that Mr. Fowler smoked three packs of cigarettes each day and that he had been doing this for forty-two years (Tr. 885). Mr. Fowler would also occasionally drink a case (though Dr. Purswani did not identify the beverage of choice) on the weekends (Tr. 885). Mr. Fowler was planning to live at the VA in their mental health ward, and, as Dr. Purswani noted, Mr. Fowler had not worked since 2004 or 2005, when he worked in a box factory (Tr. 885).

On physical examination, Dr. Purswani described Mr. Fowler as obese (Tr. 886). He opined that Mr. Fowler could not lift, except occasionally five pounds (1/20 of the time during an eight hour day) (Tr. 888). Dr. Purswani explained that he limited Mr. Fowler's lifting capabilities due to chronic low back pain, lumbar degenerative disc disease (DJD), chronic left ankle pain, and Mr. Fowler's poorly healing left calcaneal fracture (Tr. 888). Dr. Purswani also opined that Mr. Fowler could stand and walk (with breaks) for one hour in an eight-hour workday (Tr. 888). He estimated that Mr. Fowler could sit for the remaining seven hours (Tr. 888). Dr. Purswani also opined that schizophrenia would preclude Mr. Fowler from managing his own affairs (Tr. 888).

On February 11, 2008, William Downey, M.D., reviewed the record and opined that Mr. Fowler could lift up to fifty pounds occasionally and up to twenty-five pounds frequently (Tr. 938). He could stand and/or walk for a total of six hours in an eight-hour workday and he could sit for about six hours in an eight-hour workday (Tr. 938).

On May 19, 2008, state agency reviewing psychologist, Frank D. Kupstas, Ph.D., reviewed the record and opined that Mr. Fowler could remember simple instructions, but would have trouble with detailed instructions, at times (Tr. 1046). Similarly, Dr. Kupstas opined that Mr. Fowler could sustain concentration,

3

persistence, and pace over extended periods for simple tasks, but would have some
difficulty doing so for detailed tasks (Tr. 1046). Mr. Fowler could interact with the
general public, with some difficulty at times, but still could do so (Tr. 1046). Dr.
Kupstas indicated that Mr. Fowler could respond to routine changes (Tr. 1046).

On May 27, 2008, Dr. Susan Warner reviewed the record and opined that Mr.
Fowler could lift twenty pounds occasionally and ten pounds frequently (Tr. 1049).
He could stand and/or walk for about six hours in an eight-hour day (Tr. 1049).
Similarly, Dr. Warner opined that Mr. Fowler could sit for about six hours in an
eight-hour day (Tr.1049). Dr. Warner commented that the consultative examination
done by Dr. Purswani was overly restrictive given that Mr. Fowler's calcaneal
fracture had been surgically addressed (Tr. 1052). Thus, Dr. Warner advised that Dr.
Purswani's conclusions not be given full weight (Tr. 1052).

Doc. 15, pgs. 4-7.

At the administrative hearing, held on December 10, 2008, a "Medical Expert", Dr. Theron Blickenstaff, M.D., appeared and testified. Dr. Blickenstaff's testimony is summarized as follows:

Dr. Blickenstaff testified that Mr. Fowler's record described left ankle
problems that led to surgery in April 2008 (Tr. 44). Since there had been a short
amount of time since the procedure, Dr. Blickenstaff noted that the record did not
contain a good functional physical examination (Tr. 44). Dr. Blickenstaff observed
that there was no (updated) description of Mr. Fowler's gait (Tr. 44). Dr.
Blickenstaff commented that the record also contained evidence of chronic
obstructive pulmonary disease (COPD) seen on both chest x-ray and physical
examination (Tr. 44). The record, however, did not contain a pulmonary function
study that would quantify the severity of Mr. Fowler's COPD (Tr. 44).

Based on the objective evidence in the record, Dr. Blickenstaff opined that
Mr. Fowler could lift up to thirty-five pounds occasionally and up to fifteen pound
more frequently (Tr. 45). He could stand/walk for no more than four hours in an
eight-hour workday (Tr. 45). He could climb ladders on an occasional basis, and he
needed to avoid exposure to vapors, fumes, dust, and other pulmonary irritants (Tr.
45). Dr. Blickenstaff stated that any other limitations would depend on the credibility
of the subjective complaints (Tr. 45).

Doc. 15, pg. 3.

Also at the hearing, the plaintiff testified. Under examination by his attorney, the plaintiff stated that he had attempted to work at times since his disability onset date. He

4

stated that the longest duration he had been able to work had been a week. His earnings records indicated he made $4,000 in 2005. (Tr. 27). He stated he could not remember working or making $4,000. He was cautioned at that point by the ALJ that his credibility was in peril. (Tr. 28). In his disability report filed by him with the Administration, he stated that his disability onset date, the date the plaintiff asserts he became disabled, was January 1, 2002, but that he stopped working on March 1, 2006. As noted by the ALJ (Tr. 17), the plaintiff posted some earnings, although never enough to constitute substantial gainful activity, during each year from 2002 through 2007. (Tr. 146).

The ALJ also called a vocational expert ("VE") Dr. Robert A. Spangler. He first asked Dr. Spangler to vocationally identify and categorize the plaintiff's past relevant jobs. He then asked Dr. Spangler to consider a person with the limitations opined by Dr. Blickenstaff, which included lifting 35 pounds occasionally, 15 frequently, standing and walking for no more than four hours in an 8 hour workday, and avoidance of exposure to vapors and other irritants. Also, the person would be limited to simple, routine, repetitive work with only occasional public contact. In a somewhat convoluted fashion, Dr. Spangler identified 5,620,761 jobs in the nation and 119, 843 in the region *reduced* by 40%. In that regard, he stated "with the limitations set forth by Dr. Blickenstaff with occasional public, I'd reduce those numbers by 40 %, so 60 % would be the residual...most of them are medium, but there's 1,000 light ones." According to the Court's calculations, that would mean 3,372,456 jobs in the nation, and 71,906 jobs in the region *if* plaintiff had the exertional capability opined *by Dr. Blickenstaff* (Tr. 47-48). In his next hypothetical, the ALJ added a sit-stand option. The VE said that would reduce the number of jobs by 80%, which would

5

Case 2:10-cv-00250-JRG-DHI   Document 16   Filed 12/13/11   Page 5 of 12   PageID #: 68

mean there were 674,491 national and 14,381 regional jobs. (Tr. 48) Continuing this confusing method of naming the proverbial baby, Dr. Spangler was asked to assume the plaintiff had the same restrictions except being limited to the sedentary exertional level. His answer was "at sedentary, simple , if the person can do the full range, which he couldn't, there's 458,045 in the nation, unskilled, sedentary, simple jobs, 9,889 in the region, less 40%, there wouldn't be a sit/stand problem on that one." (Tr. 49). Finally, in a regrettably unique crystal clear question and answer, the VE said if plaintiff was testifying truthfully about his complaints there would be no jobs. (Tr. 49-50). Also, if he were limited to the extent opined by Dr. Purswani, there would be no jobs he could perform. (Tr. 50).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease, chronic obstructive pulmonary disease, nicotine dependence, and alcohol dependence in remission. (Tr. 17). Although the ALJ did not include a severe mental impairment in his findings, he included limited public interaction and a limitation to simple, routine, repetitive work in his hypothetical questions to the VE. He found that the plaintiff's residual functional capacity ["RFC"] was for "light work...except the claimant is limited to occasional climbing ladders. The claimant should also avoid exposure to vapors, dust, and irritants. He is further limited to simple and routine work tasks and instructions. He should have occasional contact with the general public and a sit/stand option." (Tr. 18). The ALJ found that the plaintiff was not credible to the extent he claimed limitations beyond the RFC found by the ALJ. (Tr. 20 and 21).

The ALJ makes brief mention of Dr. Purswani's report stating "a physical examination of December 3, 2007 revealed the claimant maintains a full range of motion,

6

except in his back. He showed antalgic gait without assistance, but he was able to heel toe walk (not in tandem). His bilateral ankles were stable and he exhibited no motor/sensory deficits. The claimant denied chest pain. It was also noted that the claimant's allegation of myocardial infarction and aneurysm are not confirmed by objective evidence." He did recount the opinions of the state agency physicians, one of whom found the plaintiff capable of a limited range of medium work while the other found him capable of a limited range of light work. (Tr. 20).

With regard to the weight assigned opinions of the various doctors, the ALJ stated "the substantial weight of the opinion evidence from his physicians, as well as the opinions of the nonexamining state agency physicians, does not indicate that the claimant is precluded from all work activity." (Tr. 21).

Based upon the VE's testimony, the ALJ found that the plaintiff could perform a substantial number of jobs with his RFC, "such as food preparer, bartender, dishwasher, non-farm animal care worker, light bookkeeping clerk, and production machine tender." Accordingly the plaintiff was found to be not disabled. (Tr. 22).

Plaintiff's sole argument is that the ALJ failed to accord proper weight to Dr. Purswani, and failed to state explanations as to why he favored the opinions of nonexamining physicians over Dr. Purswani, the sole examining doctor to render a medical assessment. The Commissioner counters by stating that the ALJ relied primarily on the plaintiff's lack of credibility, and then does an admirable job of supplying the reasoning for the ALJ rejecting Dr. Puswani's report which was lacking in the hearing decision.

It is not the function of the Court in conducting a judicial review to go to great lengths

7

to "fill in the gaps" in the Commissioner's hearing decision. The ALJ's findings must be supported by substantial evidence, and he or she must follow the law and regulations in adjudicating a claimant's case. In some instances, the law imposes a duty on the ALJ to explain why a particular finding was made or why greater weight was given to one piece of evidence than another. In some instances, what the ALJ did, and why, *is* the issue, and counsel's well-supported explanations of what the ALJ might have thought or might have been aware of is no substitute for a proper explanation in the hearing decision itself.

There are various Sixth Circuit decisions affirming the Commissioner where the ALJ relied upon a non-examining source, either state agency or "medical expert," while giving less weight to an examining source or even a treating source. *See, Barker v. Shalala,* 40 F.3d 789 (6th Cir. 1994); *Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006); and *Ealy v. Commissioner of Soc. Sec.* 594 F.3d 504 (6th Cir. 2010). However, in each of those cases, the Court noted that the ALJ stated his reasons for rejecting the opinion of the examining doctor and for giving greater weight to the non-examining source. Common sense suggests that an examining source would be in a better position than a non-examiner to opine as to an individual's capabilities *unless* some factors recognized and identified by the finder of fact show why this was not the case.

Here, the Commissioner argues that the ALJ's finding regarding the plaintiff's lack of credibility offsets all other shortcomings in the hearing decision. But while the ALJ may well have demonstrated why he did not believe the plaintiff's subjective complaints, that does not stand as a reason for dismissing Dr. Purswani's finding of functional limitations when Purswani's opinions on this are not even mentioned. The Court recognizes that the

8

requirement contained in 20 C.F.R. § 404.1527(d)(2) goes only to treating sources. Indeed, the Sixth Circuit has stated in *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007) that "in the absence of treating-source status for these (examining but non-treating) doctors, we do not reach the question of whether the ALJ violated *Wilson*[1] by failing to give reasons for not accepting their reports." However, the Sixth Circuit has stated that "with regard to nontreating, but examining, sources, the agency will simply '[g]enerally give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined' him...Because [the non-treating examining source] should not have been afforded controlling weight, in order to determine how much weight to give [the doctor's] opinion, the ALJ should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty. *See* 20 C.F.R. 4041527(d)." *Ealy*, *supra*, at 514.

The Court has absolutely no way of knowing whether the ALJ considered Dr. Purswani's opined limitations.

All of that being said, this Court is no great fan of time-consuming and expensive remands where a few sentences added to the hearing decision could provide the required justification. However, there is a far more serious and fundamental flaw in this case which the Court must conclude is not a harmless error.

As stated above, the hypothetical question to the VE which generated the basis for the ALJ's ultimate finding that a substantial number of jobs exist which the plaintiff can perform,

---

[1] *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541 (6th Cir. 2004).

9

asked him to assume the exertional capabilities opined at the hearing by Dr. Blickenstaff, the medical expert. Dr. Blickenstaff opined in that regard that the plaintiff could lift "no more than 35 pounds occasionally and 15 pounds frequently..." (Tr. 45). The VE, in answering the question, used "the limitations set forth by Dr. Blickenstaff..." (Tr. 48).

In the hearing decision, the ALJ found that the plaintiff had the exertional capability for limited range of *light work*. "*Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.*" 20 C.F.R. 4041567(b). Thus, the ALJ found that the maximum weight the plaintiff could occasionally lift was 15 pounds less than the weight opined by Dr. Blickenstaff used in the question to the VE. The "frequent" weight which could be lifted and carried in the RFC was 5 pounds less. The VE gave answers which were convoluted in the extreme, but even looking at them in their best light the jobs identified were clearly identified in response to a question containing a higher level of functional capacity than the ALJ found to be the case.

There is another problem with the jobs listed in the hearing decision of food preparer, bartender, dishwasher, non-farm animal care worker and light bookkeeping clerk. (Tr. 22). After identifying these jobs in response to the first hypothetical, the VE testified that "most of them are medium but there's 1,000 light ones." (Tr. 48). The Court is not sure if the VE is talking about the national or regional economy when stating that there are "1,000 light ones." Assuming these are jobs in the region, his answer appears to reduce those by 40% when the non-exertional impairments in that hypothetical are added to the mix. (Tr. 48).

10

However, the second hypothetical adds the requirement for a sit/stand option[2] which the VE said would reduce the number of jobs already identified by 80%. As stated by the VE, "so 80% of 60, that'd be the residuals under the same types of jobs." Therefore, if there were a 1000 light jobs to start with, there would now be 200. And, if the 1000 had already been reduced by 40%, to 600, then the further 80% reduction would leave only 120 out of those 1000 original jobs. 200, much less 120, is not a substantial number of jobs.

The Court is certainly not convinced that the plaintiff is disabled. The ALJ's findings regarding his lack of credibility are not unfounded. A judicially mandated award of benefits is not in order.

The issue regarding the hypotheticals to the VE and the number of jobs identified was not raised in the plaintiff's brief. However, it is far too serious a matter for this Court to simply ignore. That being the case, the position taken by the Commissioner in his brief, written in response to the sole issue raised by the plaintiff, cannot be said to lack substantial justification.

It is therefore respectfully recommended that the case be REMANDED to the Commissioner for further consideration, especially for a clear resolution of the number of jobs, if any, which the plaintiff can perform. Therefore, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be GRANTED to the extent it requests a remand. It is further recommended that the defendant Commissioner's Motion for

---

[2]The Court and the Commissioner agree that the sedentary jobs identified in the third hypothetical (Tr. 49) would be eliminated by the sit/stand option being imposed, as the ALJ did in his RFC. *See,* Document 15, pg. 4.

Summary Judgment [Doc. 14] be DENIED.[3]

                                        Respectfully submitted:


                                         s/ Dennis H. Inman
                                        United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).